# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARENCE A. BENDER,<br>    Petitioner<br><br>    v.<br><br>THOMAS MCGINLEY, et al.,<br>    Respondents | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:    No. 1:19-cv-60<br><br>(Judge Kane) |

## MEMORANDUM

On January 10, 2019, pro se Petitioner Clarence A. Bender ("Petitioner"), who is presently confined at the State Correctional Institution in Coal Township, Pennsylvania ("SCI Coal Township"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On February 15, 2019 Respondent filed a response to Petitioner's § 2254 petition. (Doc. No. 9.) After receiving an extension of time (Doc. Nos. 15, 16), Petitioner filed a traverse (Doc. No. 18). His § 2254 petition is therefore ripe for resolution. For the following reasons, the Court will deny Petitioner's § 2254 petition.

## I.  BACKGROUND

### A.  Procedural History

Petitioner is serving a term of life imprisonment imposed after he was convicted of second-degree murder and robbery. (Doc. No. 1 at 1); see also Commonwealth v. Bender, Docket No. CP-22-CR-0000287-2012 (Dauphin Cty. C.C.P. Nov. 5, 2012).[1] The Superior Court of Pennsylvania set forth the background of the case as follows:

---

[1] In a habeas proceeding, federal courts may take judicial notice of state court records. See Minney v. Winstead, Civ. No. 12-1732, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); see also Reynolds v. Ellingsworth, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing Petitioner's § 2254 petition, the Court takes judicial notice of the publicly-available dockets of Petitioner's criminal and collateral post-conviction proceedings in the Court of Common Pleas of Dauphin County, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court.

Ms. [Tiffany] Daniels's testimony is summarized as follows: Ms. Daniels and the Victim were engaged at the time of the shooting. The Victim aspired to become a rapper, posted videos of himself rapping on YouTube, and performed at clubs and events. The Victim had a reputation as being involved in the hip-hop scene and he maintained a public image as being affluent.

On December 3, 2011, Ms. Daniels and the Victim went to the Derry Street Café ("Café"), left, went to another bar, and then returned to the Café at approximately 12:15 a.m. on December 4, 2011. Ms. Daniels was intoxicated by the end of the night. Although Ms. Daniels was familiar with Appellant and [Brandon Ruiz ("Co-Defendant")], she did not see either individual or [Appellant's friend,] Mr. [Tyrell] Waiver at the Café. Ms. Daniels and the Victim left the Café at closing time, which was approximately 1:30 a.m.

In the parking lot, the Victim tried to maneuver his and Ms. Daniels's car out of its spot, but it was blocked by another vehicle. The Victim exited his vehicle and asked a nearby individual if he knew who owned the vehicle, but the individual did not respond. The Victim turned and lifted his right leg, at which point Appellant grabbed the Victim from behind and demanded that he "give that shit up." [Co-Defendant] grabbed the Victim by the neck with his left arm and, with his right hand, held a chrome semiautomatic gun against the right side of the Victim's neck. When Ms. Daniels heard Appellant threaten the Victim, she bent down to look out of the open driver's side doorway.

The Victim reached for his gun as he was attacked. As Appellant and the Victim tussled, [Co-Defendant], who was unarmed, patted down the Victim. Ms. Daniels heard a gunshot, exited the vehicle, and found the Victim lying face-up in a pool of blood. One of the chains the Victim had that night was missing after the shooting. Ms. Daniels asserted in her testimony that Appellant shot the Victim.

Mr. [John] Sanks[, head of security at the Café,] testified that the Victim and Ms. Daniels were frequent patrons of the Café. Mr. Sanks testified that he was familiar with Appellant and [Co-Defendant], and that the two men arrived around midnight on December 4, 2011. According to Mr. Sanks's testimony, he patted down both Appellant and [Co-Defendant], but found no contraband. Mr. Sanks testified that he did not witness Appellant or [Co-Defendant] interacting with Ms. Daniels or the Victim that night. Mr. Sanks testified that Ms. Daniels and the Victim left the Café, that Appellant, Mr. [Christopher] Diggs, and Mr. Weaver left the bar a few minutes later, and that [Co-Defendant] walked out

2

> afterwards. Mr. Sanks testified that, upon hearing a gunshot outside, he looked across the street and saw Appellant, [Co-Defendant], the Victim and Ms. Daniels in the area where the shot came from; Mr. Sanks then watched [Co-Defendant] and Appellant cross Derry Street to return to the SUV. According to Mr. Sanks's testimony, Appellant ran away from the scene first. Mr. Sanks testified that [Co-Defendant] and Appellant got into the SUV and, after a moment, the SUV drove westward down Derry Street.
>
> According to [Harrisburg Police Department] Detective [Christopher] Krokos's testimony, following an interview on December 4, 2011, [Co-Defendant] provided him with a statement that essentially claimed that Appellant and [Co-Defendant] approached the Victim to assist him in maneuvering his vehicle, but Appellant shot the victim and took two of the Victim's chains. Detective Krokos testified that, following an interview on January 3, 2012, Appellant provided a statement that asserted that [Co-Defendant] was fighting with the Victim in the parking lot, Appellant approached the two in order to stop the fight, but [Co-Defendant] shot the Victim. Detective Krokos testified that the surveillance video from the Café established Mr. Diggs, Mr. Weaver, and Appellant arrived at the Café together, and that [Co-Defendant] met them at the bar. Detective Krokos testified that the surveillance video from the Café established that Appellant walked up directly behind the Victim.

Commonwealth v. Bender, No. 1012 MDA 2013, 2014 WL 11015650, at *1-2 (Pa. Super. Ct. Jan. 27, 2014) (quoting Trial Court Opinion, February 15, 2013, at 4-6, 15). Following a jury trial on September 18, 2012, Petitioner was convicted of second-degree murder and robbery. See id. at *2.

Subsequently, Petitioner filed a Post Conviction Relief Act ("PCRA") petition,[2] seeking to have his direct appeal rights reinstated. (Doc. No. 1 at 69.) His direct appeal rights were reinstated on May 14, 2013, and he appealed his convictions and sentence to the Superior Court.

---

[2] See 42 Pa. Cons. Stat. Ann § 9541, et seq. The PCRA "permits motions for post-conviction collateral relief for allegations of error, including ineffective assistance of counsel, unlawfully induced guilty pleas, improper obstruction of rights to appeal by Commonwealth officials, and violation of constitutional provisions." See Hankins v. Fulcomer, 941 F.3d 246, 251 (3d Cir. 1991).

3

(Id.)  On January 27, 2014, the Superior Court affirmed Petitioner's convictions, but vacated his concurrent sentence for robbery due to the trial court's failure to merge it as a lesser included offense.  See id. at *5.  On August 29, 2014, the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal.  See Commonwealth v. Bender, 626 Pa. 703 (Pa. 2014).

Petitioner then filed a PCRA petition, raising several claims for relief, including claims of prosecutorial misconduct and ineffective assistance of counsel.  (Doc. No. 1 at 19.)  The PCRA Court dismissed Petitioner's petition on July 25, 2017.  See Commonwealth v. Bender, Docket No. CP-22-CR-0000287-2012 (Dauphin Cty. C.C.P. July 25, 2017).  The Superior Court affirmed the dismissal of Petitioner's PCRA petition on July 27, 2018.  See Commonwealth v. Bender, No. 1278 MDA 2017, 2018 WL 3598652, at *1 (Pa. Super. Ct. July 27, 2018). Petitioner subsequently filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 10, 2019.  (Doc. No. 1.)

### B. Petitioner's Habeas Claims

Petitioner raises the following grounds for relief in the instant habeas petition:

1. Prosecutorial misconduct by not correcting known false testimony by Ms. Daniels at trial;

2. Trial attorney was ineffective for failing to request a suppression hearing before trial on the basis that the affidavit of probable cause falsely stated that Petitioner was armed and shot the victim;

3. Lower courts erred by not conducting a post-trial hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), on the basis of the allegedly false statement noted above;

4. Trial attorney was ineffective for not objecting to Ms. Daniels's false testimony at trial and for not seeking a mistrial;

5. The state courts erred by not granting Petitioner a new trial despite the false affidavit; and

6. Appellate counsel was ineffective for not raising a claim that trial counsel was ineffective for not objecting to Ms. Daniels's false testimony at trial and for not asking for a mistrial.

(Id.)

## II.    LEGAL STANDARD

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." See Dunn v. Colleran, 247 F.3d 450, 468 (3d Cir. 2001) (quoting Calderon v. Coleman, 525 U.S. 414, 146 (1998)). The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism. See Engle v. Isaac, 456 U.S. 107, 128 (1982). "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." Id. States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. See Brecht v. Abrahamson, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." See 28 U.S.C. § 2254(a). If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

## III. DISCUSSION

As noted above, Petitioner raises six (6) grounds for relief, all of which stem from his belief that the prosecution presented false testimony from Ms. Daniels during his trial. (Doc. No. 1.) Respondent argues that the Court should deny Petitioner's § 2254 petition because the state courts did not unreasonably apply clearly established federal law and did not make an unreasonable determination of the facts in light of the evidence presented. (Doc. No. 9.) Petitioner raised all six (6) grounds for relief during PCRA proceedings. See Bender, 2018 WL 3598652, at *3-4.

In discussing Petitioner's grounds for relief, the Superior Court explained:

> [Petitioner's] second through sixth claims all revolve around [his] contention that eyewitness Tiffany Daniels falsely identified him as the shooter. Specifically, [Petitioner] claims, in Ms. Daniels['s] December 4, 2011 statement to the police, Ms. Daniels told the police that, while she witnessed the shooting, she did not know the shooter or his accomplice. However, on December 5, 2011, Ms. Daniels told the police that, prior to the shooting, she knew [Petitioner] and Co-Defendant Ruiz—and that she witnessed [Petitioner] murder the Victim. According to [Petitioner], Ms. Daniels['s] second statement could not have been true because "[a person's] memory while intoxicated does not 'improve' the next day." Further, [Petitioner] claims that the statement was false and manufactured by the police, as the police wanted "to get [Petitioner] off the streets for good" and they did this by "coercing Ms. Daniels to change her testimony to implicate [Petitioner]."
>
> From this unsupported supposition, [Petitioner] claims that his trial counsel was ineffective for: 1) not requesting a suppression hearing because the affiant in the search warrant affidavit, Detective Krokos, "deliberately used [Ms. Daniels's] fabricated evidence/statements in the affidavit of probable cause" and 2) failing to object to the Commonwealth's use of Ms. Daniels['s] false testimony at trial.
>
> [Petitioner's] claims on appeal fail. Simply stated, the mere fact that Ms. Daniels['s] December 5, 2011 statement to the police differed from her December 4, 2011 statement does not prove that her December 5, 2011 statement was false. Further, the jury was well aware of Ms. Daniels['s] differing statements because the defense introduced Ms. Daniels['s] December 4, and 5, 2011 statements into evidence at trial—and then thoroughly cross-examined Ms. Daniels as to differences between her statements and her possible motivations for giving

6

different statements to the police. Thus, Appellant's second through sixth claims are meritless.

Bender, 2018 WL 3598652, at *6.

### A. Claim Three: Non-Cognizable on Habeas Review

As his third claim for relief, Petitioner contends that the trial court erred by not conducting a post-trial hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), on the basis that the affidavit of probable cause supporting the arrest warrant falsely stated that Petitioner was armed and shot the victim. (Doc. No. 1.)

The Supreme Court has held that a federal habeas court cannot review a Fourth Amendment claim unless the petitioner was denied a full and fair opportunity to litigate it in the state courts. See Stone v. Powell, 428 U.S. 465, 494 (1976). Generally, a petitioner has received a full and fair opportunity to litigate a Fourth Amendment claim if the state has made available a mechanism for requesting the suppression of evidence, irrespective of whether the petitioner actually availed himself of that mechanism. See Boyd v. Mintz, 631 F.2d 247, 250 (3d Cir. 1980). A petitioner has also had a full and fair opportunity to litigate his claim regardless of whether the state courts properly resolved the claim. See Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002). On the other hand, a petitioner has not received a full and fair opportunity if the state's system contains a structural defect that prevented the state from fully and fairly hearing the Fourth Amendment claim. See id.

Rules 578 and 581 of the Pennsylvania Rules of Criminal Procedure permit a defendant to file a pre-trial motion to suppress evidence, thereby providing a mechanism for presenting Fourth Amendment issues in the Pennsylvania state courts. See Pa. R. Crim. P. 578, 581.

Petitioner, however, did not avail himself of that mechanism.[3] Moreover, as noted above, Petitioner raised his claim in his PCRA petition, and the state courts denied his claim as meritless. Nothing in the record before the Court suggests that Petitioner did not receive a full and fair litigation of his Fourth Amendment claim. See, e.g., Marshall, 307 F.3d at 82 (noting that whether or not a state court incorrectly decided a petitioner's Fourth Amendment claim is immaterial to the full and fair opportunity analysis). Accordingly, the Court will deny Petitioner's third ground for relief as barred by Stone. See, e.g., Reyes-Brooks v. Obenland, No. C14-1932 RSM, 2015 WL 1424234, at *12 (W.D. Wash. Mar. 27, 2015) (concluding that the federal habeas petitioner's claim that the state court erred by failing to hold a Franks hearing was barred by Stone).

B.      **Claim One: Prosecutorial Misconduct for Presenting False Testimony**

Petitioner first contends that the prosecution engaged in misconduct by presenting false testimony from Ms. Daniels at trial. (Doc. No. 1.) As to this claim, a "state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." See Napue v. Illinois, 360 U.S. 264, 269 (1959). It is "fundamentally unfair to the accused where 'the prosecution knew, or should have known, of the perjury.'" See Lambert v. Blackwell, 387 F.3d 210, 242 (3d Cir. 2004) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)). "The same is true when the government, although not soliciting false evidence, allows it to go uncorrected when it appears at trial." United States v. Biberfeld, 957 F.2d 98, 102 (3d Cir. 1992). "[T]he conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Lambert, 387 F.3d at 242 (quoting Biberfeld, 957 F.2d

---

[3] As discussed below, Petitioner's second ground for relief is that trial counsel was ineffective for failing to request a pretrial suppression hearing. (Doc. No. 1.)

8

at 102). Moreover, to establish prosecutorial misconduct, a habeas petition must establish: "(1) [the government's witness] committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (3) there is any reasonable likelihood that the false testimony could have affected the verdict." See United States v. John-Baptiste, 747 F.3d 186, 210 (3d Cir. 2014) (citing Lambert, 387 F.3d at 242).

As noted above, the Superior Court rejected Petitioner's claim, concluding that the fact that Ms. Daniels's statements differed did not prove that her December 5, 2011 statement was false and noting that the jury was made aware of her differing statements. See Bender, 2018 WL 3598652, at *6. Based upon this, the Court concludes that Petitioner has not demonstrated that the state court's disposition of this claim was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Accordingly, Petitioner's first ground for relief will be denied.

**C.     Claims Two, Four, and Six: Ineffective Assistance of Counsel**

Petitioner raises three (3) claims of ineffective assistance of counsel in his § 2254 petition. As his second ground for relief, Petitioner maintains that trial counsel was ineffective for failing to request a pretrial suppression hearing on the basis that the affidavit of probable cause falsely stated that he was armed and shot the victim. (Doc. No. 1.) As his fourth ground for relief, he alleges that trial counsel was ineffective for not objecting to Ms. Daniels's false testimony at trial and for not seeking a mistrial. (Id.) As his sixth ground for relief, Petitioner argues that appellate counsel was ineffective for not raising a claim on appeal asserting that trial counsel was ineffective for not objecting to Ms. Daniels's false testimony at trial and for not asking for a mistrial. (Id.) As discussed below, Petitioner's claims lack merit.

9

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." <u>See id.</u> at 688; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000). Second, under <u>Strickland</u>, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>See id.</u> at 694. The <u>Strickland</u> test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>Dooley v. Petsock</u>, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. <u>See</u> <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); <u>Foster v. Ward</u>, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in <u>Strickland</u> "qualifies as 'clearly established Federal law'" for purposes of the AEDPA. <u>See</u> <u>Rainey v. Varner</u>, 603 F.3d 189, 197 (3d Cir. 2010)

(quoting Williams v. Taylor, 529 U.S. 362, 391 (2000)).[4] Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of Strickland or are based on an unreasonable determination of the facts. See Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005).

Petitioner first maintains that trial counsel was ineffective for failing to request a suppression hearing pursuant to Franks on the basis that the affidavit of probable cause supporting the warrant issued for his arrest falsely stated that he was armed and shot the victim. (Doc. No. 1.) Petitioner suggests that Detective Krokos knew that the statement was false because video footage showing a different version of events existed and because Ms. Daniels provided inconsistent statements. (Doc. No. 18 at 4-6.)

As the United States Court of Appeals for the Third Circuit has noted:

In Franks, the Supreme Court determined that a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant subsequent to the ex parte issuance of the warrant. There, the Court created a mechanism to allow a defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid. First, the defendant must make a "substantial preliminary showing" that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause. At the hearing, the defendant must ultimately prove by a preponderance of the evidence that: (1) [] the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination.

United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006). With respect to the truth, "[t]his does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily

---

[4] The standard under Pennsylvania law for ineffective assistance of counsel is consistent with the two-prong Strickland analysis. See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).

correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." See Franks, 438 U.S. at 165. However, statements should be "truthful" in the sense "that the information put forth is believed or appropriately accepted by the affiant as true." See id.

As noted above, the Superior Court concluded that Petitioner's claim was meritless, noting that "the mere fact that Ms. Daniels['s] December 5, 2011 statement to the police differed from her December 4, 2011 statement does not prove that her December 5, 2011 statement was false." See Bender, 2018 WL 3598652, at *6. Upon review of the record, the Court concludes that the disposition of Petitioner's claim did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner has not demonstrated that Detective Krokos knowingly or deliberately, or with reckless disregard, included false statements in the affidavit of probable cause supporting the arrest warrant. Thus, counsel was not ineffective for failing to request a Franks hearing on that basis. Petitioner's second ground for relief will therefore be denied.

Next, Petitioner claims that trial counsel was ineffective for not objecting to Ms. Daniels's false testimony at trial and for not seeking a mistrial. (Doc. No. 1.) In addressing this claim, the Superior Court, in reviewing the PCRA court's conclusions, noted that "the defense introduced Ms. Daniels['s] December 4, and 5, 2011 statements into evidence at trial—and then thoroughly cross-examined Ms. Daniels as to differences between her statements and her possible motivations for giving different statements to the police." See Bender, 2018 WL 3598652, at *6. The Court's review of the trial transcript (Doc. No. 20) confirms that while

12

counsel neither objected to Ms. Daniels's testimony during direct examination nor requested a mistrial, counsel did thoroughly cross-examine Ms. Daniels regarding the differences between her statements. Upon review of the record, this Court concludes that the disposition of Petitioner's claim did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner has failed to demonstrate that he was prejudiced by counsel's allegedly ineffective performance because he has not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 694. Accordingly, Petitioner's fourth ground for relief will be denied.

Finally, Petitioner maintains that appellate counsel was ineffective for not raising a claim on direct appeal that trial counsel was ineffective for not objecting to Ms. Daniels's false testimony at trial and for not asking for a mistrial. (Doc. No. 1.) Appellate counsel is not required to advance every nonfrivolous claim, but rather may argue only certain claims to maximize the chance of success on appeal. See Johnson v. Tennis, 549 F.3d 296, 302 (3d Cir. 2008) (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)). Generally, the presumption of effective assistance will only be overcome when unraised claims are clearly stronger than those presented. See Smith, 528 U.S. at 288. As noted supra, trial counsel did cross-examine Ms. Daniels regarding her inconsistent statements. Moreover, in light of this Court's conclusion that counsel was not ineffective for failing to request a mistrial, the Court cannot conclude that it was

objectively unreasonable for appellate counsel to not raise this issue on appeal.[5] Accordingly, Petitioner's sixth ground for relief will be denied.

### D. Claim Five: Trial Court Error

As his fifth ground for relief, Petitioner asserts that the trial court erred by not granting him a new trial despite the false affidavit. (Doc. No. 1.) He maintains that his rights under the Fifth Amendment to the United States Constitution were violated because he was forced to stand trial on an indictment partially based upon Ms. Daniels's allegedly false testimony. (Id.) As noted above, the Superior Court considered his claim, concluding that it was meritless because the differences between Ms. Daniels's statements did not prove that her December 5, 2011 statement was false. See Bender, 2018 WL 3598652, at *6. Petitioner has not demonstrated that the state court's disposition of this claim was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Accordingly, his fifth ground for relief will be denied.

### E. Request for Evidentiary Hearing

Petitioner also requests that the Court hold an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2)(B). (Doc. No. 1.) According to Petitioner, an evidentiary hearing would establish that he was convicted using false testimony and that counsel was ineffective for failing to raise that issue. (Id.) Section 2254(e)(2)(B) provides that "the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--. . . (B) the facts underlying the claim

---

[5] In any event, absent specific circumstances that do not appear to be present in the instant matter, "claims of ineffective assistance of counsel are to be deferred to PCRA review." See Commonwealth v. Holmes, 79 A.3d 562, 576 (Pa. 2013). Thus, if appellate counsel had raised this claim, it would not have been cognizable on direct appeal.

would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." See 28 U.S.C. § 2254(e)(2)(B). Upon consideration of the record, the Court concludes that Petitioner has not made the requisite showing. Accordingly, his request for an evidentiary hearing will be denied.

### F. Request for Discovery

Petitioner also seeks discovery pursuant to Rule 6 of the Rules Governing § 2254 Proceedings, requesting that the Court direct the prosecutor to make available video footage of the incident. (Doc. No. 1.) "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rather, discovery requests rest in the sound discretion of the Court. See Levi v. Holt, 192 F. App'x 158, 162 (3d Cir. 2006). Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts, which is also applicable to habeas petitions filed pursuant to § 2241, provides that the Court may authorize discovery upon a showing of "good cause." See Rule 6(a), 28 U.S.C. foll. § 2254. Under this standard, the Court "should grant leave to conduct discovery only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is . . . entitled to relief.'" See Pinson v. Oddo, No. 1:16-CV-1256, 2017 WL 4046815, at *2 (M.D. Pa. Sept. 13, 2017) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). Petitioner has not met this standard. Accordingly, the Court will deny his request for discovery.

### IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under

28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Accordingly, reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a COA. Thus, the Court will decline to issue a COA, as Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## V.     CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) will be denied, and a COA will not issue. An appropriate Order follows.